**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ADIS and Denisa BAJGORIC,**
**SASA SUSA d/b/a ASP Logistics,**
**EDIN TOPIC, MENSAUD TOPIC,**
**and GEORGE URECHE,**

**Plaintiffs,**

**Case No. cv**
**Hon.**

**RED LINE LOGISTICS, INC.,**
**ZAIM BAJGORIC, and ANEL PENAVA,**

**Defendants.**

______________________________________________________ /

Keith D. Flynn (P74192)
Jeff A. DeLaunay (P87821)
MILLER COHEN, P.L.C.
7700 Second Avenue, Suite 335
Detroit, MI 48202
(313)964-4454
(313)964-4490 facsimile
kflynn@millercohen.com
jdelaunay@millercohen.com
*Attorneys for Plaintiffs*

______________________________________________________ /

**PLAINTIFF, ADIS and DENISA BAJGORIC, SASA SUSA, D/B/A ASP LOGISTICS, MENSUD TOPIC, EDIN TOPICAND GEORGE URECHE'S CLASS ACTION COMPLAINT AND JURY DEMAND**

PLAINTIFFS, **ADIS** and **DENISA BAJGORIC**, **SASA SUSA**, d/b/a **ASP LOGISTICS, MENSUD TOPIC, EDIN TOPIC,** and **GEORGE URECHE,** on

behalf of themselves and all similarly situated persons, known or unknown, by their attorneys, **MILLER COHEN, P.L.C.**, and for their Class Action Complaint against Defendants, **RED LINE LOGISTICS, INC., ZAIM BAJGORIC**, and **ANEL PENAVA,** state as follows:

## INTRODUCTION

1. These claims are brought by Plaintiffs as representatives of a class of truck owner-operators employed by Defendants allegedly as independent contractors. They seek relief in connection with a scheme devised by Defendants to defraud Plaintiffs and to procure secret profits from Plaintiffs. Defendants achieved this by failing to fully disclose interests in transactions with Plaintiffs. The relief sought includes actual, punitive and treble damages resulting from the scheme to defraud, an accounting, the imposition or constructive trusts with tracing, the imposition and execution of equitable liens, divesture, costs of investigation and suit, interest and attorney fees, and injunctive relief.

Defendants operate a trucking company and other business entities, whose specific identifications are unknown to Plaintiffs and for which discovery is necessary. Plaintiffs are or were owner-operators for Defendants. Defendants would bid on freight shipment jobs (loads) through a third-party site. If Defendant was awarded the job, it then contacted Plaintiffs to deliver the load. The third-party deals only with Defendants and pays Defendants for the service

of having the freight delivered by Defendants' owner-operators—the Plaintiffs. Defendants have exclusive contracts with Plaintiffs called "lease agreements," copies of which are in the possession of Defendants. Under those agreements, Plaintiffs receive a certain percentage of the "revenues" of the load that was contracted for through the third-party and Defendants received the remaining percentage of that amount. An example of the contract is attached as ***Exhibit A.***

After Plaintiffs transported a load, they were sent what Defendants purported was the amount received from the third parties. Upon information and belief, Defendants never disclosed the actual amount paid to Defendants by third parties for the loads. Plaintiffs have been informed and do believe that Defendants actually received more from the third parties than they disclosed to Plaintiffs and wrongly kept that difference for themselves. As an example, Defendant would bid $10,000 for a load, and if that load was awarded to Defendants, they would then assign that load to an owner-operator. Defendants would tell the owner-operator that the load was worth $7,500, pocket the $2,500 difference, and then pay the owner-operator based on the fraudulent amount per their individual lease agreement terms. Defendants communicated load values through telecommunications equipment like email, text or computer programs, with fraudulent transactions often crossing state and international lines. An example of this communication is attached as ***Exhibit B***.

The members of this class are approximately 50-plus truck drivers according to US DOT Number 2418970. The use of the email and other telecommunications involves a message for each trip period and loads carried by each driver each time over this extended period of time. The fraudulent communications are in the thousands to multiple individuals who are class members.

Defendants have operated their businesses in a pattern of racketeering. By using email and other electronic correspondence to transmit the fraudulent documents in furtherance of both of these schemes and to conceal their wrongdoing, Defendants committed wire fraud in violation of 18 U.S.C. 1343. Furthermore, and in the alternative, it constitutes conversion, a breach of the parties' agreements, unjust enrichment, promissory estoppel, and fraudulent concealment. Plaintiffs have filed this lawsuit seeking a full remedy for the Defendants' illegal conduct.

## JURISDICTION

2. The amount in controversy exceeds $1,000,000, exclusive of interest and costs. 28 U.S.C. § 1332.

3. A substantial part of this litigation arises under the laws of the United States of America including 18 USC § 1961(1)(B), (3), (4), (5); and 18 USC § 1962(c) and (d). This Court therefore has jurisdiction pursuant to 28 U.S.C §§ 1331 and 1337.

4. Defendants have their principal places of business 13842 Lakeside

Circle, Sterling Heights 48313, Macomb County, Michigan, and therefore venue is proper in this Court. 28 U.S.C. § 1391(a) (3).

5. Some Plaintiffs have arbitration agreements with Defendants over these issues, but Defendants refuse to arbitrate those claims on a class basis even though nothing in those agreements prevents class arbitration.

6. Upon information and belief, Defendant has these agreements and knows which plaintiffs are subject to valid arbitration agreements, and which are not.

## PARTIES

7. Plaintiff, Adis Bajgoric has been the owner of a truck under contract with Defendants in the State of Michigan.

8. Plaintiff, Denisa Bajgoric has been the owner of a truck under contract with Defendants in the State of Michigan.

9. Plaintiff, Sasa Susa, d/b/a ASP Logistics, has been the owner of a truck under contract with Defendants in the State of Michigan.

10. Plaintiff, Mensud Topic, has been the owner of trucks under contract with Defendants in the State of Michigan.

11. Plaintiff, Edin Topic, has been the owner of a truck under contract with Defendants where his place of business is located.

12. Plaintiff, George Ureche, has been the owner of a truck under contract

with Defendants in the State of Michigan.

13. Defendant Zaim Bajgoric has acted as a person in control of Red Line Logistics, Inc., as the Articles of Incorporation list him as President and Treasurer.

14. Defendant, Anel Penava, has acted as a person in control of Red Line Logistics, Inc., as the Articles of Incorporation list him as Director and Secretary.

15. On information and belief, there are other corporate entities that have been created by Defendants Bajgoric and Penava by which they engage in the racketeering schemes alleged herein. The identity of these entities will be established through discovery.

16. The Plaintiff class consists of all other owner operators similarly situated as named Plaintiffs.

## FACTUAL ALLEGATIONS

17. Defendants Red Line Logistics, Inc., Bajgoric, and Penava and have engaged in a pattern of racketeering.

18. Defendants employed truck driver owner operators, ostensibly as independent contractors.

19. Defendants required the truck owner drivers to agree to a contract called a "lease agreement," whereby the amount charged to third-party customers for trucking services would be split between the parties with a certain percentage going to the owner-operator and a certain percentage going to Defendants minus costs and

expenses. ***Exhibit A,*** an example of such contracts.

20. The essential premise of these lease agreements was that the parties would split the total value of the loads the owner-operators hauled for Defendants, minus fuel and enumerated costs.

21. The exact percentage split varied by owner-operator.

22. One of the agreements Plaintiffs have access to shows 80 percent of load value was to be paid to the Plaintiff, while Defendants took 20%. ***Exhibit A***.

23. These contracts were exclusive, meaning that Plaintiffs could not work for anyone else during the term of the agreement.

24. This exclusivity left Plaintiffs more vulnerable to Defendants' scheme as they had to take the loads for the amount offered lest they be blackballed and offered no more loads.

25. Defendants secured the contracts to haul loads by bidding on the loads with third-party customers.

26. When defendant's won a bid, that load would then be assigned to an owner-operator.

27. Upon information and belief, Defendants used a digital Transportation Management System (TMS) called "Apex," which contains the real data, including actual total values, of loads.

28. Plaintiffs did not have access to Apex.

29. Upon information and belief, Defendants use another TMS called "Sylectus," to which drivers had access, to assign jobs, pay drivers, etc.

30. Defendants would enter the actual load information into Apex, including what Defendant was being paid to transport the load.

31. Defendants would then instruct the dispatcher to reduce the value of the load by a certain amount, and report that fraudulently reduced amount into Sylectus for Plaintiffs to see.

32. Drivers would then accept these jobs under the false pretense that the total value was the amount reflected in Sylectus.

33. Defendants would send through email a statement purporting to show the amount paid by the third party and an accounting for the load value split minus costs and expenses. ***Exhibit B,*** an example of the Statement.

34. Upon information and belief, the statement was fraudulent in that it did not disclose the actual amount paid by the third party, which was often if not always in excess of the amount accounted for in the statement.

35. Defendants would keep that money—the difference between the actual and reported value—for their own account.

36. This fraudulent conduct was repeated for each trip for each truck driver over a period of years.

37. The number of electronic communications and email transactions during

this period of time could exceed thousands of separate events. Defendants fraudulently concealed this deception from Plaintiffs by misrepresenting the amount paid.

38. Defendants would also communicate the fraudulent load value to Plaintiffs through telecommunications such as Voice Over Internet Protocol (VOIP) applications and via telephone and text.

39. In connection with the activities giving rise to this claim for relief, each Defendant acted with malice, intent, knowledge, and with a wanton and reckless disregard of the rights of Plaintiffs.

40. Upon information and belief, Defendants would individually or generally instruct the dispatcher to report fraudulent load values to Plaintiffs.

41. At all relevant times Defendants were engaged in interstate and foreign commerce in that the trucking activities encompassed virtually all the states of the United States, Mexico and Canada.

42. At all relevant times and in furtherance of and for the purpose of executing the scheme and artifices to defraud and to obtain money by means of false pretenses, Defendants, on numerous occasions, used and caused to be used interstate and international telephone and other electronic communications in furtherance of their scheme.

43. Defendants used email and other electronic communications by both informing the owner-operator of the fraudulent load value to induce performance, and by sending invoices, statements and other materials in furtherance of their scheme, each such use of the mails in connection with the schemes and artifices to defraud and to obtain money by means of false pretenses constituting a separate and distinct violation of 18 USC 1343.

## CLASS ACTION ALLEGATIONS AND REPRESENTATION

44. Plaintiffs incorporate all paragraphs contained in this Complaint as though they are pled herein.

45. This action is brought by Plaintiffs on their own behalf and on behalf of all other truck driver owners denominated as independent contractors by Defendants. Joinder in this action is impracticable because the class consists of about 50-plus individuals, not all of whom are known at this time. The class is comprised of all truck drivers' owners driving their own rigs during the relevant limitations period.

46. There are questions of law or fact common to the members of the class that predominate over questions of law or fact affecting only individual class members. The question of law or fact is common to all members of the class as they were all signatories individually to the same contract and were all defrauded by the same artifice and design. The difference between them only

involves the ministerial task of arithmetically calculating the amount of damages individually.

47. The claims of the named Plaintiffs are for the entire class, and involve the same fraud which is objectively determined.

48. Plaintiffs, or some of them, are similarly situated residents and there is no reason to doubt that they will fairly and adequately protect the interests of the class. The maintenance of this action as a class action is superior to other available methods of adjudication.

**COUNT I**
**CIVIL RICO**
**18 USC § 1961(1)(B), (3), (4), (5); and 18 USC § 1962(c) and (d)**

49. Plaintiffs incorporate all paragraphs contained in this Complaint as though they are pled herein.

50. All the named Plaintiffs are "persons" within the meaning of 18 USC 1961(3) and 4, and 1962 (c) and (d).

51. Defendants constitute collectively an "enterprise" within the meaning of 18 USC 1961(3) and (4), and 1962 (c) and (d).

52. The named Defendants were each employed by or associated with an enterprise engaged in, and the activities of which affected interstate and foreign commerce with the meaning of 18 USC 1962 (c) and (d).

53. With respect to the individual named Defendants, each of them

conspired to, within the meaning of 18 USC 1962 (d) and did conduct or participate, directly or indirectly, in the conduct of Defendant Red Line Logistics, Inc.'s affairs in a fashion prohibited by 18 USC 1962 through a pattern of activity defined by 18 U.S.C. 1961(1) (B) and (5) by multiple instances of wire fraud in violation of 18 USC 1962.

54. In engaging in this secret arrangement, Defendants kept from Plaintiffs the true amounts of the transactions for which they had a duty to disclose and actively concealed their secret arrangements. As a result, Defendants had sole knowledge and/or access to material facts and knew that these facts were not known to or reasonably discoverable by Plaintiffs.

55. Defendants breached their duties by suppressing material facts, including the fact that they were paid more for the service than the amount disclosed to Plaintiffs and intentionally and knowingly concealed these facts with the intent to induce Plaintiffs to provide trucking services.

56. In doing these acts alleged, Defendants acted with oppression, fraud and malice and subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights.

57. As a proximate result of Defendants' fraudulent concealments and omissions of material facts, Plaintiffs have been damaged in excess of $1,000,000.

## PRAYER FOR RELIEF

58. Plaintiffs pray that judgement be entered against Defendants and in favor of Plaintiffs as follows:

A. For damages against Defendants, and each of them, jointly and severally, in an as yet undetermined amount in excess of $1,000,000, the amount duly trebled in accordance with 18 USC 1964(c);

B. For punitive damages, in an amount to be determined at trial, against Defendants, and each of them, jointly and severally;

C. For the costs of investigation and litigation reasonably incurred, as well as attorney fees in accordance with 18 USC 1964(c);

D. An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

E. The imposition and execution of equitable liens;

F. Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

G. For such other damages, relief and pre-judgment interest as this Honorable Court may deem just and proper to award Plaintiffs' complete relief.

**COUNT II**
**BREACH OF CONTRACT**

59. Plaintiffs incorporate all paragraphs contained in this Complaint as though they are pled herein

60. Under their contracts with Defendants, Plaintiffs were to receive a percentage of the value of the load which is the amount paid by the third parties to Defendants for the trucking of freight.

61. An example of the contract is attached as ***Exhibit A.***

62. Defendants misrepresented the amount paid by the third parties and, instead, only disclosed a false amount which was lesser.

63. Defendants then kept the difference for themselves and fraudulently concealed the breach.

64. In doing so, the Defendants breached the parties' agreements.

65. By this conduct Plaintiffs have been injured in excess of $1,000,000.

**PRAYER FOR RELIEF**

66. Plaintiffs pray that judgement be entered against Defendants and in favor of Plaintiffs as follows:

A. For damages against Defendants, and each of them, jointly and severally, in an as-yet-to-be-determined amount in excess of $1,000,000;

B. An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition

of constructive trusts with tracing;

C. The imposition and execution of equitable liens and all other injunctive relief;

D. Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

E. For such other damages, relief and pre-judgment interest as the court may deem just and proper to award plaintiff's complete relief.

## COUNT IV
## UNJUST ENRICHMENT/
## QUANTUM MERUIT

67. Plaintiffs incorporate all paragraphs contained in this Complaint as though they are pled herein.

68. Plaintiffs performed labor and services for Defendants in good faith and with a reasonable expectation that they would receive full payment for their work.

69. Defendants received the benefits of Plaintiffs' labor and services but failed to pay Plaintiffs for the fair and reasonable value of those services by failing to pay Plaintiffs the agreed upon percentage of the actual amount by third parties.

70. Defendants fraudulently concealed the amount that they had been paid by the third parties and disclosed a false amount pocketing the difference.

71. By this conduct Plaintiffs have been injured in excess of $1,000,000.

## PRAYER FOR RELIEF

72. Plaintiffs pray that judgement be entered against Defendants and in favor of Plaintiffs as follows:

A. For damages against Defendants, and each of them, jointly and severally, in an as-yet-to-be determined amount in excess of $1,000,000;

B. An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

C. The imposition and execution of equitable liens and all other injunctive relief;

D. Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

E. For such other damages, relief and pre-judgment interest as the court may deem just and proper to award plaintiff's complete relief.

## COUNT V
## PROMISSORY ESTOPPEL

73. Plaintiffs incorporate all paragraphs contained in this Complaint as though they are pled herein.

74. Defendants' promise to compensate Plaintiffs with eighty percent (80%) of the amount paid by third parties was clear and definite.

75. Defendants knew or should have known that their promise of compensation would induce Plaintiffs to provide labor and services.

76. Defendants' promise of compensation did in fact induce Plaintiffs to perform work for Defendants.

77. Plaintiffs were financially damaged by Defendants' failure to compensate them as promised.

78. Defendants fraudulently concealed the amount that they had been paid by the third parties.

79. By this conduct Plaintiffs have been injured in excess of $1,000,000.

## PRAYER FOR RELIEF

80. Plaintiffs pray that judgement be entered against Defendants and in favor of Plaintiffs as follows:

A. For damages against Defendants, and each of them, jointly and severally, in an as-yet-to-be determined amount in excess of $1,000,000;

B. An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

C. The imposition and execution of equitable liens and all other injunctive relief;

D. Orders of divestiture of any interest, including real or personal

property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

E. For such other damages, relief and pre-judgment interest as the court may deem just and proper to award plaintiff's complete relief.

**COUNT VI**
**CONVERSION**

81. Plaintiffs incorporate all paragraphs contained in this Complaint as though they are pled herein.

82. Plaintiffs performed labor and services for Defendants in good faith and with a reasonable expectation that they would receive full payment for their work.

83. Instead, Defendants converted a portion of this property to their own use.

84. Plaintiffs asked for the return of their property.

85. Defendants failed to return this property.

86. Plaintiffs are entitled to three times the actual damages sustained, costs and attorney's fees under MCL 600.2919(a).

87. Defendants fraudulently concealed the amount that they had been paid by the third parties.

88. By this conduct Plaintiffs have been injured in excess of $1,000,000.

**PRAYER FOR RELIEF**

89. Plaintiffs pray that judgement be entered against Defendants and in

favor of Plaintiffs as follows:

A. For damages against Defendants, and each of them, jointly and severally, in an as-yet-to-be determined amount in excess of $1,000,000, the amount duly trebled in accordance with MCL 600.2919(a).

B. For the costs of investigation and litigation reasonably incurred, as well as attorney fees in accordance with MCL 600.2919(a);

C. An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

D. The imposition and execution of equitable liens and all other injunctive relief;

E. Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

F. For such other damages, relief and pre-judgment interest as the court may deem just and proper to award plaintiff's complete relief.

## COUNT VII
## BREACH OF CONTRACT – REFUSAL TO ARBITRATE

90. Plaintiffs incorporate all paragraphs contained in this Complaint as though they are pled herein.

91. Some Plaintiff's have arbitration agreements in their contracts with

Defendant. (***Exhibit C***).

92. Pursuant to the terms of the arbitration agreement, Plaintiff sent an arbitration Demand to Defendants.

93. Defendants refuse to arbitrate Plaintiffs class action claims in good faith despite there being no language in the agreements that would prevent class action arbitration.

94. Moreover, Plaintiffs do not all have copies of their contracts with Defendants and therefore only Defendant knows which Plaintiffs and claims are subject to Arbitration.

95. Defendant refuses to produce this information.

96. Accordingly, Defendant has breached the arbitration agreement between Plaintiffs—both named and unnamed—and Defendant.

**REQUEST FOR RELIEF**

A. Issue an order compelling Defendant to arbitrate all claims of Plaintiff class that are subject to valid arbitration agreements.

B. Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

C. Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination, and retaliation described in the allegations above;

D. Granting Plaintiff's reasonable attorney's fees and costs incurred in compelling arbitration as permitted by the arbitration agreements between Plaintiffs and Defendants; and

F. Granting Plaintiff all such further legal and equitable relief as this Arbitrator deems appropriate to make Plaintiff whole.

Respectfully Submitted,

By: _/s/ *Jeff A. DeLaunay*_
MILLER COHEN, P.L.C.
Keith D. Flynn (P74192)
Jeff A. DeLaunay (P87821)
7700 Second Avenue, Suite 335
Detroit, MI 48202
(313) 964-4454
(313) 954-4490 - Facsimile
jdelaunay@millercohen.com
kflynn@millercohen.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ADIS and Denisa BAJGORIC,**
**SASA SUSA d/b/a ASP Logistics,**
**EDIN TOPIC, MENSAUD TOPIC,**
**and GEORGE URECHE,**

**Plaintiffs,**

**Case No.**
**Hon.**

**RED LINE LOGISTICS, INC., ZAIM BAJGORIC,**
**and ANEL PENAVA,**

**Defendants.**

______________________________________________/

Keith D. Flynn (P74192)
Jeff A. DeLaunay (P87821)
MILLER COHEN, P.L.C.
7700 Second Avenue, Suite 335
Detroit, MI 48202
(313)964-4454
(313)964-4490 facsimile
kflynn@millercohen.com
jdelaunay@millercohen.com
*Attorneys for Plaintiffs*

______________________________________________/

**PLAINTIFF, ADIS and DENISA BAJGORIC, SASA SUSA, D/B/A ASP LOGISTICS, MENSUD TOPIC, EDIN TOPICAND GEORGE URECHE'S CLASS ACTION JURY DEMAND**

PLAINTIFFS, on behalf of themselves and all similarly situated persons, known or unknown, by and through their attorneys, MILLER COHEN, P.L.C.,

hereby demand a trial by jury for all issues so triable.

Respectfully Submitted,

By: /s/ *Jeff A. DeLaunay*
MILLER COHEN, P.L.C.
Keith D. Flynn (P74192)
Jeff A. DeLaunay (P87821)
7700 Second Avenue, Suite 335
Detroit, MI 48202
(313) 964-4454
(313) 954-4490 - Facsimile
jdelaunay@millercohen.com
kflynn@millercohen.com

Date: September 17, 2026

# EXHIBIT A

Unit# 2152

# INTERSTATE VEHICLE LEASE AGREEMENT

**General Instructions:**

- Print in ink or type all entries.
- Complete BOTH pages of this form.
- Copies of the completed lease should be made and:
  (1) Retained by the Lessee and Lessor;
  (2) Carried in each vehicle covered by the lease agreement.

| | | | |
|---|---|---|---|
| **Lessee (Carrier leasing vehicle to add to fleet):** RED LINE LOGISTICS INC | **Doing Business As: (if applicable)** | | |
| **Address or Principal Place of Business** 12860 14 MILE | **City:** WARREN | **State:** MI | **ZIP Code:** 48088 |
| **MCRS USDOT** 2418970 | | | |
| **Lessor (Party who has possession of the vehicle):** ASP LOGISTICS | **Doing Business As: (if applicable)** | | |
| **Address or Principal Place of Business:** 51011 ACE DR | **City:** MACOMB | **State:** MI | **ZIP Code:** 48042 |

**For the vehicles included in this lease agreement, complete the following.**

| Unit No. | Make | Type | Year | Vehicle Identification Number | Title State |
|---|---|---|---|---|---|
| 2152 | KW900 | 900 | 2000 | 1XKWDB9XXYR850627 | MI |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

This lease is effective for not less than 30 days and is effective on 09-28-22 (Date) and shall:

(Check one) A. ☐ Expire on the following date. ____________

B. ☐ Expire under the following circumstance. ____________

C. ☑ Be continued until canceled.

Except as otherwise specified in Appendix A, Lessee agrees to pay compensation for rental of this equipment on the basis of:
(1) 20 % of revenues, or (2)________cents per mile, or (3) flat charge of $________.

This interstate lease shall provide that the vehicle(s) must be operated under the exclusive supervision, direction and control of the Lessee.

The Lessee shall hold exclusive possession and control over the equipment under this Interstate lease for the entire term of the lease.

The Lessor certifies that the vehicle(s) within this lease, which have a gross vehicle weight of 26,001 pounds or more and are to operate in interstate transit, have within the immediately preceding twelve (12) months has an inspection pursuant to the requirements of the 49 CFR 396.17.

This lease was signed by the Lessee, Lessor or Authorized Representatives.

**BOTH (Lessee AND Lessor) SIGNATURES REQUIRED**

| | |
|---|---|
| Aldin Penava [signature] | Sasa Susa [signature] |
| Signature of Lessee or Authorized Representative (Carrier or Carrier Representative) | Signature of Lessor or Authorized Representative (Owner or Party Leasing Vehicle to Carrier) |
| Dated: 09-28-2022 | Dated: 09-28-2022 |

# EXHIBIT B

**From:** george ureche
**To:** Jeff DeLaunay
**Subject:** Fwd: Pay Sheet
**Date:** Thursday, July 17, 2025 11:44:54 AM

Sent from my iPhone

Begin forwarded message:

> **From:** "anelpenava@hotmail.com;" <systememail@sylectus.com>
> **Date:** October 12, 2021 at 6:03:21 PM EDT
> **To:** us7star@icloud.com
> **Subject: Pay Sheet**
> **Reply-To:** anelpenava@hotmail.com

| | | | | | |
|---|---|---|---|---|---|
| **Gureche Gureche** | **Gheorghe ureche Seven Star Trucking, Inc** | | Trips Completed Through: 10/03/2021<br>Pay Period: 10/08/2021 | RED LINE LOGISTICS INC<br>12860 14 MILE ROAD<br>WARREN, MI 48088 | |
| Unit No: 2096 | Unit Size: TRACTOR | | Mileage Type: Miles | | |
| **Pro No** | **Travel Order** | **Ship Date** | **Pay Total Pick-Up** | **Delivery** | **Weight** |
| **530652** | **36123-0-A** | **09/27/2021** | **$2,000.00** CRESTLINE, OH<br>**Posted** 44827<br><br>$2,000.00 Linehaul Pay | 09/28/2021<br>CHICAGO, IL<br>60633 | 42,480 |
| **530690** | **36157-0-A** | **09/28/2021** | **$1,500.00** CHICAGO, IL<br>**Posted** 60633<br><br>$1,500.00 Linehaul Pay | 09/29/2021<br>CRESTLINE, OH<br>44827 | 9,878 |
| **530724** | **36191-0-A** | **10/01/2021** | **$2,000.00** HUNTINGTON,<br>**Posted** IN 46750<br><br>$2,000.00 Linehaul Pay | 10/01/2021<br>DEARBORN, MI<br>48120 | 9,762 |
| **530737** | **36204-0-A** | **10/01/2021** | **$1,500.00** DEARBORN, MI<br>**Posted** 48120<br><br>$1,500.00 Linehaul Pay | 10/01/2021<br>HUNTINGTON,<br>IN 46750 | 9,747 |

| | | |
|---|---|---|
| Trip Related Pay: | **$7,000.00** | Total T.O. Loaded Miles: 945 |
| Total Reimbursables: | **$0.00** | Total Empty Miles: 353 |
| Gross Pay: | **$7,000.00** | |
| Deductions: | **-$20.00** | advance per: AnelP - qualcom service weekly deduction |
| | **-$8.00** | Fuel card fee per: AnelP - 09/29 10/01 |
| | **-$1,000.00** | Fuel per: AnelP - 09/29 10/01 |
| **Total Deductions:** | **-$1,028.00** | |
| Total Pay: | **$5,972.00** | |
| Includes Empty Mile Pay Of: | **$0.00** | |
| Total Trips: | **4** | |

# EXHIBIT C

# Lease Agreement for Equipment with Option to Buy

ADIS BAJGORIC, referred to as LESSOR and

RedLine Logistics, referred to as LESSEE, agree:

A) Parties and Effective Date. This Equipment Lease Contract Agreement (hereinafter referred to as "Agreement") is deemed made and entered into this 20 day of September, 2021, between **RED LINE LOGISTICS, INC.** (a Michigan corporation), hereinafter referred to as "Lessor", and ADIS BAJGORIC d.b.a as ADIS BAJGORIC SSN/FEIN 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 hereinafter referred to as "Lessee", for leasing – with purchase to buy option, the following equipment:

Make: FRHT CORONADO

Year: 2016

VIN#: 3ALXFB009GDGX5962

LEASE TERM: 24 MONTHS

TOTAL LEASE COST: 20%

MONTHLY INSTALMENT RATE: $ 20% due on each 1st calendar date of month

PURCHASE PRICE: $1 (one dollar) after the MATURITY DATE OF LEASE term

RED LINE LOGISTICS, INC. (Lessor)

______________________________
Lessor representative

Printed Name______________________________

Date and Place of Signature: ______________________________ Office

Lessee

Lessee's Name: RED LINE LOGISTICS

Telephone No: 586-693-2200

Address: 12860 14 MILE RD

City and State: WARREN MI 48088

By: Anel Renova
Lessee Representative

Printed Name: Anel Renova

Date and Place of Signature: [illegible] Renova Office

B) Lessee agrees to lease the above listed equipment from lessor for the above in section "A" listed terms including the following conditions:

1. Lessor will have the sole ownership of the equipment until the maturity date of agreement, and /or financial terms of total fixed sum and financial and other obligations are met and $1(one dollar purchase price) is paid.

2. Lessor is entitled for the whole above agreed sum regardless of the lessee's willingness to pay and fulfill the lease terms and all the obligation earlier than on maturity date.

3. Minimum monthly payment is required each month and on the 1st – first calendar date of each month with grace period of 5 – five days; payment over monthly minimum will count towards the total lease sum, but it will not diminish the total sum amount.

4. After any monthly payment is not met by 1st calendar date, lease agreement will be subject to termination and equipment repossession. Lessee is always responsible for occurred, deferred, aroused and scheduled cost of the lease terms. Lessor can and will use all legal means and tools to be reimbursed for all the payments and financial obligation within this agreement. Lessee inability to pay will not shorten the lease terms, within any part of this agreement, in dollar or length of time amount. Lease terms must be met before Lessee is freed of all financial and other obligations.

5. Otherwise than listen in part 1. Lease Agreement cannot be terminated prior its maturity date without Lessor written consent under any circumstances or conditions

6. Lessee does not assume the ownership of equipment under any circumstances until lease agreement expires, all the agreed, occurred, deferred, aroused and scheduled costs and expenses are paid.

7. Lessee agrees to have solely use of the equipment. Lessee cannot lease, sell or transfer the ownership of the equipment to any party without written approval by Lessor.

8. Lessor and Lessee agree that plate registration of the equipment will be maintained under Red Line Logistics Inc. and prepaid by Lessor, but costs are obligation of, and reimbursed by Lessee in addition to monthly payment.

9. Lessor and Lessee agree all necessary, regulated and required insurance of the equipment will be maintained under Red Line Logistics Inc. and prepaid by Lessor, but costs are obligation of, and reimbursed by Lessee in addition to monthly payment.

10. Lessee will notify Lessor in writing one month before the lease maturity date of the end of the lease agreement.

11. When lease meets maturity date it will automatically be renewed for month to month basis, until Lessee inform Lessor of lease cancelation and all obliagtions, financial and other are met.

12. The equipment is leased on AS IS condition; no warranty and guaranties of equipment are included in this agreement

13. Lessee agrees to use the equipment for transportation and designated purposes. Any misuse of the equipment will be subject for termination of lease. All the expenses occurred by any irresponsible act of Lessee and its associates will be paid by Lessee with all the terms of the lease.

14. Lessee agrees to always keep leased equipment at minimum DOT required and necessary condition level to be able to operate and transport goods on public roads. Lessee guaranties to be aware of all Federal, State and Local laws and will always abide all laws.

15. Lessee agrees to be restrained from alternating or modifying or on any other way redesigning equipment's interior or exterior look unless written approval by Lessor, unless is required by law, or Rules and Regulations. Any unauthorized modification to the equipment can and/or will be cost of Lessee including but not limited to: repair cost, labor, parts and loss time cost of Lessor.

16. Lessee agrees to take care of maintenance and repair of the equipment in only licensed and legal business shops, unless otherwise approved by Lessor. All repair and regular maintenance are immediately due upon occurrence, as scheduled or as suggested by OEM – original equipment manufacturer.

17. Lessee will take all the responsibility of but not limited to the:

- Tractor non-trucking and dispatched (cargo, liability, tractor-trailer physical damage) Insurance costs
- Insurance deductible of $1000.00 per occurrence
- Annual cab plate registration cost
- Annual HUT - Highway use tax form 2290
- All the IFTA, HUT, permit and taxcosts
- All other common operating, scheduled, occurred, deferred and aroused expenses such are, but not limited to: fuel, oil changes, annual inspection, tires, brakes, additives, accessories.
- All other operating maintenance and repair of the equipment: scheduled, occurred, required by DOT,
- All tolls
- All towing and wrecker expenses
- All other expenses not included in this agreement but occurred by Lessee act or normal transportation business

18. Lessee agrees and shall be solely responsible for paying all its expenses on timely manner for any and all expenses listed and related to this Agreement. Lessee agrees to be financially responsible and will always be willing and able to take care of its business, expenses and costs. Lessor shall in no way be liable for any expenses. If Lessee is not able, or willing to fulfill its obligation towards and related to this agreement, equipment may be repossessed and all expenses occurred by, and cost or part of full term of the lease, determined strictly and only by Lessor, will and it is responsibility of Lessee. Upon request, Lessee shall provide an affidavit certifying that it has complied with these obligations.

19. Lessees decision to willingly or unwillingly exit out the industry, change of career/profession, health and medical condition or any cause to inability to operate or work will not free Lessee of its responsibilities and obligations to and within this Agreement, unless written approval by Lessor.

20. In consideration of the mutual promises contained herein, the parties agree that all disputes, claims, or controversies relating to this Agreement that are not resolved by agreement of the parties shall be resolved exclusively by final and binding arbitration in Macomb County, Michigan before a mutually agreed single arbitrator or any other mutually agreed licensed arbitrator. If the parties are unable to agree upon an arbitrator, in the event that arbitration rules are inconsistent with this Agreement, this Agreement shall control. The parties agree to abide by all decisions and awards rendered in such arbitration proceedings. Such decisions and awards rendered by the arbitrator shall be final, binding, and non-appealable and may be entered in any court having jurisdiction thereof as a basis of judgment and of the issuance of execution for its collection.

21. The prevailing party in any dispute shall be awarded its costs, fees, and expenses, including reasonable attorney fees, incurred in connection with the arbitration (including fees paid or payable to the arbitrator) and in the court confirmation and enforcement of any award, in addition to any other relief that may be awarded. Similarly, if either party is required to file any legal or other action to compel the other party to participate in the arbitration process, the prevailing party in any such action shall be awarded its costs, fees, and expenses, including its reasonable attorney's fees and costs.

22. Lessee warrants it can perform the services described in this Agreement without violating the terms of other agreements it may have with any third-party.

23. Independent Review. **The parties acknowledge that they have each read this Agreement and fully understand its terms, and that they have each had a full and fair opportunity to be advised by their independent legal counsel and negotiate any changes to this Agreement to the extent they deem necessary.** The parties waive the general rule of construction, therefore, that an agreement shall be construed against its drafter. The parties also acknowledge that they have voluntarily signed this Agreement after full reflection and analysis.